The PEOPLE of the State of Colorado, Complainant,

v.

William Herb EBBERT, Attorney–Respondent.

No. 96SA312.

Supreme Court of Colorado, En Banc.

Oct. 15, 1996.

Linda Donnelly, Disciplinary Counsel, Kenneth B. Pennywell, Assistant Disciplinary Counsel, Denver, for Complainant.

Timothy A. Meinert, Dillon, for Attorney–Respondent.

## PER CURIAM.

In a stipulation, agreement, and conditional admission of misconduct, C.R.C.P. 241.18, the respondent in this lawyer discipline case has consented to disbarment. An inquiry panel of the supreme court grievance committee approved the conditional admission including the recommendation of disbarment. We accept the conditional admission and order that the respondent be disbarred.

## I

The respondent was admitted to the Colorado bar in 1981. He was suspended from the practice of law for thirty days on May 2, 1994, effective thirty days thereafter, for ne-

glect of a legal matter and use of cocaine. *People v. Ebbert,* 873 P.2d 731 (Colo.1994). He was reinstated on July 6, 1994. On October 5, 1995, the respondent was immediately suspended from the practice of law pending resolution of the present disciplinary charges. C.R.C.P. 241.8. The conditional admission in this case proposes a combined disposition of four formal complaints against the respondent in addition to two inquiry panel matters, and provides as follows.

## A

On May 23, 1994, following entry of the order of the respondent's thirty-day suspension, but before its effective date, the respondent met with Gilbert and Norma Parsons. They retained the respondent to represent Gilbert Parsons regarding a judgment against him for unpaid child support accruing over a period of twenty years. This violated C.R.C.P. 241.21(a), which provides that "[a]fter the entry of an order of disbarment, suspension, or transfer to disability inactive status the lawyer may not accept any new retainer or employment as a lawyer in any new case or legal matter...." The respondent did not notify the Parsonses of his imminent suspension, as required under C.R.C.P. 241.21(b) and (c).

On June 2, 1994, while under suspension, the respondent sent a letter to Mr. Parsons on his law office stationery, enclosing a copy of the Entry of Judgment against Parsons. The respondent indicated that he would be out of the state on vacation from June 18 through July 4, 1994, and stated that he wished to "review any revised figures with my client prior to leaving state so that a settlement proposal can be made in this matter." The respondent also sent a letter to the lawyer representing Parsons's ex-wife, but did not inform the lawyer that he was suspended from the practice of law as he was required to do under C.R.C.P. 241.21(c).

The lawyer for Parsons's ex-wife sent a letter to the respondent on June 13, 1994, conveying an offer of settlement and asking that the respondent communicate any specific offer from his client. Two days later, the respondent sent another letter on his law office stationery to opposing counsel indicat-

ing that he had met with his client and was offering to settle the matter with a lump sum payment to satisfy the judgment against Mr. Parsons. The respondent's letter continued:

> In the event that this offer of settlement is rejected by your client, I have discussed several options which Mr. Parsons may have in this matter, including petitioning the court for equitable relief from the judgment which was previously entered and the possibility of a counter proposal from your client.

The opposing lawyer on June 20, 1994, sent a letter to the respondent containing the same offer of settlement as in the lawyer's June 13, 1994 letter. Mr. Parsons accepted this offer on or about July 11, 1994. The respondent was not reinstated to the practice of law until July 6, 1994.

The respondent admits that his acceptance of new employment after entry of the order of suspension, and his subsequent conduct violated R.P.C. 5.5(a) (practice law in a jurisdiction in violation of the regulations of the legal profession in that jurisdiction); and R.P.C. 8.4(c) (engage in conduct involving dishonesty, fraud, deceit or misrepresentation); as well as C.R.C.P. 241.6(6) (any act or omission which violates the rules regarding lawyer discipline and disability or which violates an order of discipline or disability).

## B

Following entry of the order of the respondent's thirty-day suspension on May 2, 1994, he nevertheless accepted new employment in addition to the Parsons matter; he met with new and regular clients; and he accepted client retainers and practiced law during the suspension period:

(1) On May 12, 1994, the respondent filed an entry of appearance, request for pretrial conference and motion for discovery pursuant to Crim.P. 16 in Boulder County Court on behalf of a new client charged with speeding.

(2) He met with a current dissolution of marriage client on or about May 18, 1994, and prepared a demand for preliminary hearing on behalf of the client who had been charged with driving while under revocation and careless driving. The client filed the demand in Jefferson County Court on May 23, 1994. After the respondent was reinstated, he filed an entry of appearance.

While still under suspension on June 18, 1994, the respondent left Colorado on a vacation. His secretary on June 22, 1994, sent a letter on the respondent's legal stationery to the client, enclosing a copy of a notice of hearing in the dissolution matter. The letter stated, "If you have any questions concerning this matter, please feel free to give me a call." The letter was signed with the respondent's signature stamp.

Prior to leaving on vacation, the respondent failed to instruct his secretary as to the use of his legal stationery and to other activities which would violate ethical standards during his period of suspension.

(3) On May 6 and 10, 1994, the respondent met and was retained by a new dissolution of marriage client. The respondent filed his entry of appearance in the dissolution proceeding in Adams County District Court on May 11, 1994.

(4) The respondent filed a civil action on behalf of another client on May 27, 1994, in Adams County Court.

(5) On June 10, 1994, the respondent accepted a $500 retainer from a new client regarding future legal services in connection with a paternity proceeding. The respondent was then under suspension from the practice of law.

(6) The respondent had a meeting with a prospective new client on June 13, 1994, regarding a child custody matter pending in the State of Washington. The respondent did not advise the prospective client that he was suspended from the practice of law at that time, although the individual did not retain the respondent because he is not licensed in Washington.

(7) The respondent's secretary on June 22, 1994, sent a letter on the respondent's legal stationery to a client, enclosing a copy of a request for setting for temporary orders in a proceeding pending in Boulder County District Court. The letter stated, "If you have any questions concerning this matter, please

feel free to give me a call." The letter was signed with the respondent's signature stamp.

The foregoing conduct violated R.P.C. 5.5(a) (practice law in a jurisdiction in violation of the regulations of the legal profession); R.P.C. 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation); R.P.C. 8.4(g) (conduct violating accepted standards of legal ethics); R.P.C. 8.4(h) (conduct that adversely reflects on the lawyer's fitness to practice law); in addition to C.R.C.P. 241.6(6) (violating the rules regarding lawyer discipline and disability or an order of discipline or disability); and R.P.C. 241.21(a) (accept new employment and retainers after entry of order of suspension).

## C

On August 18, 1995, the respondent appeared in a hearing in the Adams County District Court in which he represented the petitioner. The district judge observed the respondent in a "disheveled" state, and the respondent also appeared to be drowsy, disoriented, disorganized, and unprepared. Twenty minutes into the hearing, the district judge saw the respondent sleeping at counsel's table. The judge stopped the hearing after watching the respondent sleep for about ten to fifteen minutes.

In addition, the same district judge issued a bench warrant for the respondent's arrest after he failed to appear at a show cause hearing because of his noncompliance with an order issued in another proceeding. When the respondent finally appeared before the district judge, the warrant was vacated.

The respondent stipulated that the above conduct violated R.P.C. 8.4(d) (conduct prejudicial to the administration of justice); and R.P.C. 8.4(h) (conduct that adversely reflects on the lawyer's fitness to practice law).

## D

On July 31, 1995, a warrant was issued for the respondent's arrest in Boulder County in connection with five counts of contributing to the delinquency of a minor, class 4 felonies; and one count of sale of marihuana, a class 4 felony. The respondent allegedly provided and sold marihuana and cocaine to a four-teen-year-old girl and other juveniles on several occasions.

A search warrant was executed on the respondent's residence on August 3, 1995. Among other items, Boulder County Sheriff Deputies seized the following:

(1) Drug paraphernalia;

(2) one triple beam scale;

(3) plastic baggies;

(4) at least eight baggies of suspected marihuana totalling over one ounce and packaged in a manner consistent with selling. The substance tested positive to the presumptive test for marihuana; and

(5) razor blades and white powder residue testing positive to the presumptive test for cocaine.

The respondent was arrested in his automobile on August 4, 1995. A search of the automobile incident to the arrest yielded a cocaine grinder containing a substance that tested positive for cocaine.

On November 11, 1995, the respondent pleaded guilty to possession of a Schedule II controlled substance, cocaine, contrary to section 18–18–405, 8B C.R.S. (1996 Supp.), a class 4 felony; possession of a Schedule V substance, buprenorphine, contrary to section 18–18–405, 8B C.R.S. (1996 Supp.), a class 1 misdemeanor; possession of more than one but less than eight ounces of marihuana, § 18–18–406(4)(a)(I), 8B C.R.S. (1996 Supp.), a class 1 misdemeanor; and contributing to the delinquency of a minor, § 18–6–701, 8B C.R.S. (1996 Supp.), a class 4 felony. On January 8, 1996, the respondent was sentenced to sixty days home detention and three years probation.

Possession of cocaine, and contributing to the delinquency of a minor, both felonies, are serious crimes under C.R.C.P. 241.16(e)(1). The respondent's conduct violated R.P.C. 8.4(b) (commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects); R.P.C. 8.4(g) (conduct violating accepted standards of legal ethics); R.P.C. 8.4(h) (conduct that adversely reflects on the

lawyer's fitness to practice law); and C.R.C.P. 241.6(5) (any act or omission violating the criminal laws of a state or of the United States).

## E

In July 1995, Traci Wiese hired the respondent to represent her on a driving under the influence of alcohol charge. She paid the respondent a flat fee of $500 on July 21, 1995.

The respondent was suspended from the practice of law on October 5, 1995. He sent Wiese a letter dated November 1, 1995, advising her that he would not be able to continue to represent her because of his suspension. Wiese sent a reply by registered mail dated November 9, 1995, requesting the return of her legal documents as soon as possible, and an accounting with respect to the $600 she had paid him and a refund of any unused portion. (The respondent had already attended a revocation hearing for Wiese on August 14, 1995, and $100 was for the hearing.)

Receiving no response, Wiese telephoned the respondent on November 17, 1995. The respondent told her that he would mail her a refund within a week. When she called him again on November 20, however, the respondent told her that he could not make a refund because he had no money. He also stated that he did not know where her documents were. The respondent has not yet provided Wiese with either an accounting or a refund, but he has returned her legal documents.

By failing to account for the fee that Wiese paid him, the respondent violated R.P.C. 1.15(b). He also violated R.P.C. 1.5(a) by charging and collecting an unreasonable fee because he did not provide either the legal services agreed to or refund the unused part. The respondent violated R.P.C. 1.16(d) as well as C.R.C.P. 241.21(b) by failing to give Wiese prompt notice of his suspension; failing to return her unearned retainer; and failing to promptly return her documents.

## F

In March 1995, Michael McCarty and his wife retained the respondent to represent them in a dispute with the Jefferson County Child Support Unit. They paid him a $400 flat fee. The respondent told his clients that he would take immediate action to resolve the dispute. The next month, however, the McCartys received notice that Jefferson County was about to activate a wage assignment, and they had ten days to object.

The respondent told Mr. McCarty that he had been unable to reach the person who had signed the notice and that she had not returned his phone calls. But when the Mr. McCarty telephoned her the next day, she returned his call immediately. She indicated that she had never heard of the respondent, nor had she received any messages from him. Subsequently, the respondent was able to resolve the disputed amounts of the arrearage and negotiate a $50 per month payment toward the arrearage while the case was pending.

The McCartys telephoned the respondent's office at least monthly during the summer of 1995. When Mr. McCarty finally reached the respondent in November or December, 1995, the respondent told him that he had been suspended from the practice of law. The McCartys later left messages for the respondent that they wanted an accounting and a return of any unused portion of their fee. When they finally reached him in January 1996, the respondent told them that he did not have the funds to make a refund. He has not returned their documents although they have requested them.

As the respondent stipulated, the foregoing conduct violated R.P.C. 1.3 (a lawyer shall not neglect a legal matter entrusted to that lawyer); R.P.C. 1.5(a) (a lawyer shall not charge or collect an unreasonable fee); R.P.C. 1.15(b) (failure to render a full accounting regarding the lawyer's fee); R.P.C. 1.16(d) (upon termination of representation, a lawyer shall take the steps reasonably necessary to protect the client's interests, including giving reasonable notice of the withdrawal, surrendering the papers and property belonging to the client, and refunding any unearned fees).

## G

On August 11, 1988, the respondent and a female companion crossed the border at Sault Sainte Marie, Michigan, into Canada. An examination of the respondent's vehicle by Canadian customs officers revealed 25 grams of marihuana, 15 grams of psilocybin (mushrooms), a smoking implement and two spoons containing traces of suspected cocaine. A loaded .357 caliber handgun was found in the luggage of the respondent's vehicle. Following his arrest, the respondent pleaded guilty to having a restricted weapon in a motor vehicle and possession of narcotics, both misdemeanor offenses under Canadian law. He received a sentence of thirty days in jail, of which he served twenty-one days, and a $1,000 fine. As part of the plea agreement, the charges against the respondent's companion were dismissed.

In 1995 and 1996, when the respondent pleaded guilty to the charges described above in Boulder County District Court, he failed to notify the sentencing court, the probation officer, or the Office of Disciplinary Counsel of the Canadian criminal charges. In response to a direct question from his probation officer in connection with the presentence investigation, the respondent falsely denied any prior drug convictions, thereby violating R.P.C. 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation).

The respondent's conduct on the Canadian border, which occurred prior to the effective date of the Rules of Professional Conduct, January 1, 1993, violated DR 1–102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on the lawyer's fitness to practice law). Because he possessed the illegal items and drugs in Michigan prior to entering Canada, the respondent violated C.R.C.P. 241.6(5) (any act or omission violating the criminal laws of a state or of the United States).

## II

■ There is no need for an extended analysis of disciplinary sanctions in this case since the respondent has consented to disbarment. The respondent's practice of law while under a disciplinary order of suspension, standing alone, would ordinarily warrant at least a three-year suspension given the assistant disciplinary counsel's representation that the respondent's conduct while suspended did not cause harm to any client. *See People v. Ross,* 873 P.2d 728, 730 (Colo. 1994) (lawyer suspended for three years rather than disbarred when his practice of law while under disciplinary suspension did not cause harm to client).

■ The facts and circumstances of the respondent's felony convictions alone warrant disbarment. Supplying cocaine and marihuana to minors is such a serious breach of ethics and the criminal law that disbarment is the only appropriate remedy. Under the ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards*), in the absence of mitigating factors, disbarment is generally appropriate when "a lawyer engages in serious criminal conduct a necessary element of which includes . . . the sale, distribution or importation of controlled substances. . . ." ABA *Standards* 5.11(a).

■ Although not a condition of the stipulation, agreement, and conditional admission of misconduct, the respondent has asked that the order of disbarment be made retroactive to the date of his immediate suspension, October 5, 1995. The inquiry panel's approval of the conditional admission is silent with respect to retroactivity, and the assistant disciplinary counsel has made no recommendation either way.

In *People v. McDonnell,* 897 P.2d 829 (Colo.1995), the lawyer entered into a conditional admission regarding the conversion of client funds and consented to disbarment. McDonnell requested that the date of the suspension be made retroactive to the date of his immediate suspension, approximately fifteen months earlier. *Id.* at 830. The effective date of the order of disbarment, as in this case, was not a condition of the stipulation. We refused to make the order of disbarment retroactive:

The absence of any unreasonable delay in these proceedings, however, and the direct relation between the misconduct and the practice of law, make retroactive discipline inappropriate. *People v. Lujan,* 890 P.2d

109, 113 (Colo.1995); *People v. Murray*, 887 P.2d 1016, 1021 (Colo.1994).

*McDonnell*, 897 P.2d at 830. In support of his request for the retroactive imposition of disbarment, the respondent relies on *People v. Varallo*, 913 P.2d 1 (Colo.1996). The order of disbarment in *Varallo* was imposed retroactive to the date of Varallo's immediate suspension because of the delay in the proceedings. *Id.* at 12. The period between the date of the immediate suspension in *Varallo* and our order of disbarment was almost three years. *Id.*

There is no comparable period of delay in this case. The respondent in this case was immediately suspended only twelve months before the date of this opinion. Moreover, a great deal of the misconduct in this case was directly related to the practice of law. We therefore decline to impose retroactive discipline in this case. Accordingly, we accept the conditional admission and the inquiry panel's recommendation.

### III

It is hereby ordered that William Herb Ebbert be disbarred and that his name be stricken from the list of attorneys authorized to practice before this court, effective immediately upon the issuance of this opinion. It is further ordered that prior to any application for readmission, the respondent will be required to demonstrate that he has made full restitution, plus interest, to Traci Wiese in the amount of $500; and Michael McCarty in the amount of $400. It is further ordered that the respondent pay the cost of this proceeding in the amount of $133.06 within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 17th Street, Suite 920–S, Denver, Colorado 80202.