**The PEOPLE of the State of Colorado, Complainant,**

v.

**Jeffrey MENTER, Respondent.**

**Nos. 04PDJ092, 05PDJ003, 05PDJ018.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Sept. 16, 2005.

Attorney Regulation. Following a sanctions hearing, the Presiding Disciplinary Judge disbarred Respondent Jeffrey Menter (Attorney Registration No. 00858) from the practice of law, effective October 17, 2005. The Court also ordered Respondent to pay restitution and the costs incurred in conjunction with these proceedings. The facts admitted through the entry of default showed Respondent knowingly violated three separate court orders and knowingly continued to practice law while under suspension. The admitted facts proved numerous other rule violations, however, the gravamen of this case is Respondent's violations of Colo. RPC 3.4(c) (knowing failure to comply with a court order) and Colo. RPC 5.5(a) (practicing law in violation of the regulations of the legal profession). Respondent failed to participate or present any mitigating evidence in these proceedings. Accordingly, the Court found no adequate basis to depart from the presumptive sanction of disbarment.

On July 27, 2005, WILLIAM R. LUCERO, the Presiding Disciplinary Judge ("the Court"), held a Sanctions Hearing pursuant to C.R.C.P. 251.18(d). LISA E. FRANKEL and JAMES C. COYLE appeared on behalf of the Office of Attorney Regulation Counsel ("the People"). Jeffrey Menter ("Respondent") did not appear, nor did counsel appear on his behalf. The Court issues the following Report, Decision, and Order Imposing Sanctions:

## REPORT, DECISION, AND ORDER IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.15(b)

*SANCTION IMPOSED: ATTORNEY DISBARRED*

### I. *ISSUE*

■ Disbarment is generally appropriate when a lawyer knowingly violates a court order or rule, or when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, with the intent to obtain a benefit for the lawyer and causes serious or potentially serious injury. If an attorney knowingly violates three separate court orders, and knowingly continues to practice law while under suspension, is disbarment the appropriate sanction?

### II. *BACKGROUND*

■ Respondent failed to participate in these proceedings, and the Court granted the People's Motions for Default on January 19, 2005, March 22, 2005, and April 28, 2005. Upon the entry of a default, all facts in the Complaints are deemed admitted and all rule violations in the Complaints are deemed established. *People v. Richards,* 748 P.2d 341, 346 (Colo.1987).

The factual background in this case is fully detailed in the admitted Complaints, which are hereby adopted and incorporated by reference.[1] Respondent essentially failed to meet his professional responsibilities in six separate matters. Respondent engaged in very serious misconduct including the neglect of a client matter, failure to communicate with a client, failure to protect the interests of a client upon termination of representation, failure to cooperate or participate in the People's investigation, knowing violation of court orders, assertion of frivolous claims, engaging in conduct prejudicial to the administration of justice, failure to keep client funds separate from his own property, making improper withdrawals from a trust account, and knowingly continuing to practice law after he had been suspended.

The facts admitted through the entry of default constitute violations of Colo. RPC 1.3 (neglect of a legal matter); 1.4(a) and 1.4(b) (failure to keep a client reasonably informed about the status of a matter and to explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation); 1.5(b) (failure to communicate the basis or rate of the lawyer's fee to a client in writing); 1.15(a) (failure to keep client funds separate from a lawyer's own property); 1.15(g) (improper withdrawals from a trust account); 1.16 (failure upon termination of representation to take steps to the extent reasonably practicable to protect a client's interests); 3.1 (asserting a frivolous claim or issue); 3.4(c)

1. The Complaints are attached to this Report as Exhibit A.

(knowing failure to comply with a court order); 5.5(a) (practicing law in violation of the regulations of the legal profession); 8.1(b) (knowing failure to reasonably respond to lawful demand for information from disciplinary authority); 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation); and 8.4(d) (conduct prejudicial to the administration of justice).

## III. SANCTIONS

The ABA Standards for Imposing Lawyer Sanctions (1991 & Supp.1992) ("ABA Standards") and Colorado Supreme Court case law are the guiding authorities for selecting and imposing sanctions for lawyer misconduct. Disbarment is generally appropriate when a lawyer knowingly violates a court order or rule with the intent to obtain a benefit for the lawyer or another, and causes serious injury or potentially serious injury to a party or causes serious or potentially serious interference with a legal proceeding. ABA Standard 6.21. Disbarment also is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system. ABA Standard 7.1. Therefore, disbarment is the presumptive sanction for Respondent's misconduct in this case.[2] However, in imposing a sanction after a finding of lawyer misconduct, the Court must examine the duty breached, the mental state of the lawyer, the injury or potential injury caused, and the aggravating and mitigating evidence pursuant to ABA Standard 3.0

Respondent's failure to participate in these proceedings requires the Court to use the allegations set forth in the Complaints in examining the factors listed above. The Court finds Respondent breached his duties to the public, the legal system, and the legal profession. The entry of default established Respondent's knowing mental state when he violated three separate court orders and con-

tinued to practice law while under suspension, with the intent to obtain a benefit for himself. The facts established by the entry of default also support a finding of actual and potential harm to the public. At the hearing, Staci Wetzler testified to the harm her husband's company has suffered as a result of Respondent's continued failure to make any payments in satisfaction of Denver District Court Judge Herbert L. Stern's sanctions order. Jack Wesoky testified to Respondent's continued failure to satisfy any portion of the judgment entered against him by United States District Court, District of Colorado Judge Walker B. Miller's sanctions order.

The People presented evidence of aggravating factors including a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceedings, substantial experience in the practice of law, indifference to making restitution, and refusal to acknowledge the wrongful nature of his conduct. Respondent's failure to appear at the Sanctions Hearing in this case precluded significant evidence of mitigating factors. However, the People represented that Respondent has a good reputation in the legal community and that he apparently separated from his wife of thirty years in 2004.

Colorado Supreme Court case law applying the ABA Standards holds disbarment is the presumptive sanction for an attorney who continues to practice law while under suspension. People v. Wilson, 832 P.2d 943, 945 (Colo.1992); People v. Redman, 902 P.2d 839, 840 (Colo.1995); People v. Ebbert, 925 P.2d 274, 279 (Colo.1996). Further, an attorney who knowingly disobeys a court order, in conjunction with other rule violations such as neglecting a client matter and commingling funds, is justifiably subject to disbarment. People v. Gonzalez, 967 P.2d 156, 157–58 (Colo.1998).

## IV. CONCLUSION

One of the primary goals of our disciplinary system is to protect the public

---

**2.** Since disbarment is the presumptive sanction based upon Respondent's knowing violation of three separate court orders and his continued practice of law while under suspension, the

Court deems it unnecessary to discuss in detail the other rule violations contained in the Complaints.

from lawyers who pose a danger to them. The admitted Complaints establish Respondent's repeated failures to comply with court orders, his continued practice of law while under suspension, and numerous other rule violations. This conduct warrants serious discipline. Both the ABA *Standards* and Colorado Supreme Court case law support disbarment under such circumstances, absent extraordinary factors in mitigation not presented here. Thus, upon consideration of the nature of Respondent's misconduct, his mental state, the significant harm and potential harm caused, and the absence of mitigating factors, the Court concludes there is no justification for a sanction short of disbarment.

## V. *ORDER*

The Court therefore **ORDERS**:

1. JEFFREY MENTER, attorney registration number 858, is **DISBARRED** from the practice of law, effective thirty-one (31) days from the date of this Order, and his name shall be stricken from the list of attorneys licensed to practice law in the State of Colorado.

2. JEFFREY MENTER **SHALL** pay full restitution to WSW, LLC and Willis Wetzler individually, the amount of $1,856.50, the City and County of Denver the amount of $6,000.00, and reimburse the Client Protection Fund $2,375.00 by October 1, 2005. Timely payment of these amounts shall be a condition of readmission.

3. JEFFREY MENTER **SHALL** pay the costs of this proceeding. The People shall submit a Statement of Costs within fifteen (15) days of the date of this Order. Respondent shall have ten (10) days within which to respond.

## *EXHIBIT A*

### COMPLAINT

THIS COMPLAINT is filed pursuant to the authority of C.R.C.P. 251.9 through 251.14, and it is alleged as follows:

### *Jurisdiction*

1. The respondent has taken and subscribed the oath of admission, was admitted to the bar of this court on October 1, 1971, and is registered upon the official records of this court, registration no. 858. He is subject to the jurisdiction of this court in these disciplinary proceedings. The respondent's registered home address is 4901 E. Dry Creek, Suite 102, Centennial, Colorado 80122.

Lanphier Matter
### *CLAIM I*

**[Failure to Communicate the Basis or Rate of the Lawyer's Fee to a Client in Writing—Colo. RPC 1.5(b) ]**

2. In March 2002, Elaine Lanphier retained the respondent to represent her with respect to problems she was experiencing in connection with her employment with the Colorado Department of Health and Environment. Ms. Lanphier contended she was being harassed by her fellow employees, which created a hostile work environment.

3. Ms. Lanphier paid the respondent $1,000.00 at the time she retained the respondent, which Ms. Lanphier understood was to be a flat fee for the respondent's representation in the matter, including an appeal to the State Personnel Board.

4. According to the respondent, he understood that he would be entitled to additional fees if further services were requested beyond an initial appeal to the State Personnel Board.

5. Pursuant to Colo. RPC 1.5(b), when a lawyer has not regularly represented a client, the basis or rate of the fee shall be communicated to the client, in writing, before or within a reasonable time after commencing the representation.

6. The respondent had not regularly represented Ms. Lanphier at the time she retained him for representation in her employment matter in March 2002.

7. The respondent failed to communicate the basis or rate of his fee to Ms. Lanphier, in writing, before or within a reasonable time after commencing the representation.

8. Through his conduct as described above, the respondent knowingly violated Colo. RPC 1.5(b).

9. As a result of the respondent's violation of Colo. RPC 1.5(b), the respondent caused disagreement between himself and Ms. Lanphier later during the representation concerning the scope of services to be included for the payment made by Ms. Lanphier.

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM II

### [Neglect of a Legal Matter— Colo. RPC 1.3]

10. Paragraphs 1 through 9 are incorporated herein as if fully set forth.

11. After his retention by Ms. Lanphier, the respondent submitted on Ms. Lanphier's behalf an appeal to the State Personnel Board. The appeal was denied by the State Personnel Board based upon its determination that there had been no specific action taken by Ms. Lanphier's employer which was eligible for review by the board.

12. After the initial appeal was filed, Ms. Lanphier filed a grievance with her employer on her own setting forth her allegations concerning harassment by co-workers. After Ms. Lanphier's grievance was denied, the respondent filed a second appeal on Ms. Lanphier's behalf with the State Personnel Board. The second grievance was based on the denial of Ms. Lanphier's grievance.

13. While these matters were pending, Ms. Lanphier's supervisors requested meetings with Ms. Lanphier and her counsel on more than one occasion. Ms. Lanphier asked the respondent to schedule such a meeting.

14. In mid 2002, a meeting was scheduled and cleared with the respondent. The respondent cancelled the meeting for personal reasons, and did not take steps to reschedule the meeting.

15. In July 2002, the director of the department in which Ms. Lanphier worked demanded that Ms. Lanphier schedule a meeting with him and Ms. Lanphier's supervisors. The letter demanding the meeting was sent to Ms. Lanphier in care of the respondent.

16. The respondent never scheduled the meeting requested by Ms. Lanphier's supervisors. Subsequently, Ms. Lanphier's employment was terminated, in part because of her failure to cooperate with her employers' requests for a meeting.

17. After Ms. Lanphier's employment was terminated, the respondent filed a third appeal on her behalf with the State Personnel Board.

18. After the respondent filed the third appeal on Ms. Lanphier's behalf, she terminated the respondent's representation because of her dissatisfaction with his representation.

19. Pursuant to Colo. RPC 1.3, a lawyer shall not neglect a legal matter entrusted to the lawyer.

20. Through his conduct as described above, particularly his failure to reschedule the meeting with Ms. Lanphier's employer and general failure to participate in informal meetings requested by Ms. Lanphier's employer, the respondent neglected a legal matter entrusted to him, in violation of Colo. RPC 1.3.

WHEREFORE, the complainant prays at the conclusion hereof.

Wetzler Matter
### CLAIM III

### [Knowing Failure to Comply with a Court Order—Colo. RPC 3.4(c) ]

21. The respondent represented Joseph Dempsey in a civil action against WSW, LLC and Willis Wetzler, individually, in Denver District Court Case No. 01CV6989. On February 4, 2003, Judge Herbert L. Stern entered an order dismissing the claims of the respondent's client with prejudice, and further ordered that the plaintiff, Mr. Dempsey, and the respondent, jointly and severally, pay attorney fees and costs incurred by the defendants in the amount of $2,256.50.

22. Judge Stern's order with respect to the fees and costs was entered as a sanction

against the respondent and his client for discovery abuses, pursuant to C.R.C.P. 37.

23. Counsel for the defendants in the civil action made demand upon the respondent and Mr. Dempsey to pay the attorney fees and costs as ordered by Judge Stern.

24. The respondent has not made any payments pursuant to Judge Stern's order, nor has his client.

25. Pursuant to Colo. RPC 3.4(c), a lawyer shall not knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists.

26. The respondent has not openly challenged the validity of Judge Stern's order.

27. The respondent has knowingly failed to comply with Judge Stern's order despite being aware of the order for more than a year.

28. Through his conduct as described above, the respondent has violated Colo. RPC 3.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

Trust Account Notification Matter

### CLAIM IV

**[Failure to Respond Reasonably to a Lawful Demand for Information From a Disciplinary Authority—Colo. RPC 8.1(b) ]**

29. At all times relevant to this claim, the respondent maintained a COLTAF trust account at Wells Fargo bank.

30. On March 31, 2004, the respondent's trust account at Wells Fargo Bank became overdrawn, resulting in a negative balance of $149.16.

31. On March 31, 2004, the Office of Attorney Regulation Counsel received a notice from Wells Fargo Bank concerning the overdraft.

32. On March 31, 2004, Laurie Ann Seab, an investigator for the Office of Attorney Regulation Counsel, sent a letter to the respondent requesting an explanation of the overdraft and copies of additional accounting documents.

33. As of April 14, 2004, Ms. Seab had not received a response from the respondent, prompting her to contact the respondent by telephone.

34. On April 14, 2004, Ms. Seab spoke with the respondent by telephone. The respondent confirmed his receipt of Ms. Seab's letter March 31, 2004.

35. During his telephone conference with Ms. Seab, the respondent stated that he needed more time to gather information to respond to Ms. Seab's letter. Ms. Seab and the respondent agreed to an extension of time through April 23, 2004, to respond to Ms. Seab's letter.

36. The respondent failed to respond to Ms. Seab's letter or to contact Ms. Seab to provide an explanation for his failure to do so.

37. On April 23, 2004, the respondent was served personally with a subpoena *duces tecum* directing him to appear for a deposition on May 24, 2004, at 10:00 a.m., and to produce certain financial records at that time.

38. On May 24, 2004, the respondent failed to appear for his deposition.

39. The respondent was aware of his obligation to appear for the deposition and knowingly failed to appear or to cooperate in the investigation.

40. On May 28, 2004, Regulation Counsel sent another letter to the respondent, via certified mail, advising that the matter was being investigated and directing the respondent to submit a written response within 20 days. The letter was sent to the respondent at his registered address.

41. The respondent refused to accept the certified letter after receiving several notices.

42. Pursuant to Colo. RPC 8.1(b), a lawyer in connection with a disciplinary matter shall not knowingly fail to respond reasonably to a lawful demand for information from a disciplinary authority.

43. Through his conduct as described above, the respondent has violated Colo. RPC 8.1(b).

44. The respondent's knowing failure to respond reasonably to lawful demands for information from the Office of Attorney Regulation Counsel has hindered significantly Regulation Counsel's ability to determine the full nature and extent of the respondent's mishandling of client funds and misuse of his trust account.

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM V

**[Failure to Keep Client Funds Separate from a Lawyer's Own Property— Colo. RPC 1.15(a) ]**

45. Paragraphs 29 through 44 are incorporated herein as if fully set forth.

46. Through a subpoena *duces tecum* served on Wells Fargo Bank, the Office of Attorney Regulation Counsel obtained records concerning the respondent's trust account and trust account activity from January 1, 2004, through March 2004.

47. The records obtained reflect the deposit of funds which, upon information and belief, relate to client matters into the respondent's trust account. Upon information and belief, based in part on the purpose for which funds are to be deposited into a trust account pursuant to Colo. RPC 1.15, some of the funds maintained in the respondent's trust account during this period of time belonged to clients or third parties.

48. During the same period of time, the respondent deposited into his trust account fees he earned as a soccer referee.

49. The funds deposited into the trust account for the respondent's services as a soccer referee were personal funds.

50. Pursuant to Colo. RPC 1.15(a), a lawyer is required to keep client or third party funds separate from the lawyer's own property.

51. By depositing funds belonging to the respondent into the trust account as described above, the respondent commingled personal funds with client or third party funds in his trust account.

52. Through his conduct as described above, the respondent violated Colo. RPC 1.15(a).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM VI

**[Improper Withdrawals From a Trust Account—Colo. RPC 1.15(g) ]**

53. Paragraphs 29 through 52 are incorporated herein as if fully set forth.

54. On more than one occasion, the respondent requested and obtained a debit card for use in conjunction with his trust account at Wells Fargo Bank.

55. The respondent utilized the debit card to draw funds from the trust account, primarily to pay personal expenses.

56. Colo. RPC 1.15(g)(1) provides that all trust account withdrawals shall be made only by authorized bank or wire transfer or check made payable to a named payee and not to cash.

57. Colo. RPC 1.15(g) precludes the use of a debit card in conjunction with a trust account.

58. Through his use of a debit card in conjunction with his trust account, the respondent knowingly violated Colo. RPC 1.15(g).

WHEREFORE, the complainant prays at the conclusion hereof.

Davison and Wesoky Matter
### CLAIM VII

**[Asserting a Frivolous Claim or Issue—Colo. RPC 3.1]**

59. The respondent represented Joyce Montabon in *Montabon v. City and County of Denver*, United States District Court, Case No. 00–WM–2258(BNB). Linda Davison, Esq. and Jack Wesoky, Esq., represented the City and County of Denver.

60. As counsel for Ms. Montabon, the respondent multiplied the proceedings unreasonably and vexatiously. Specifically, the respondent continued to submit and rely upon

an affidavit which had previously been found to be incredible by a federal magistrate.

61. The respondent even continued to submit and rely upon the affidavit after the magistrate entered an order prohibiting the affiant from testifying in the case. The respondent also submitted and argued from the affidavit in opposing a motion filed by the City and County of Denver for summary judgment even after Judge Miller issued an order in December of 2002, granting the defendant's motion for summary judgment and its motion to strike the same affidavit.

62. Colo. RPC 3.1 provides that a lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous which includes a good faith argument for an extension, modification or reversal of existing law.

63. In continuing to submit and argue from the affidavit as described above, the respondent was not making a good faith argument for an extension, modification or reversal of existing law.

64. Through his conduct as described above, the respondent repeatedly asserted issues and took positions that were frivolous, in violation of Colo. RPC 3.1.

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM VIII

### [Conduct Prejudicial to the Administration of Justice—Colo. RPC 8.4(d) ]

65. Paragraphs 59 through 64 are incorporated herein as if fully set forth.

66. On August 20, 2003, Judge Miller entered a sanctions order against the respondent pursuant to 28 U.S.C. § 1927, for his conduct as described above.

67. After further proceedings, Judge Miller entered an order, on March 8, 2004, granting judgment in favor of the City and County of Denver and against the respondent, personally, in the amount of $6,000.00, together with interest from December 31, 2003, pursuant to his previous sanction order.

68. The respondent's conduct in filing frivolous and vexatious pleadings has caused additional proceedings in the *Montebon* case that should not have been necessary. The respondent's conduct has caused the City and County of Denver to incur substantial time and expense dealing with the matter, and has required the court to expend substantial additional resources.

69. The respondent has failed or refused to satisfy any portion of the judgment entered against him or to otherwise comply with Judge Miller's sanction order.

70. Through his conduct as described above, the respondent engaged in conduct prejudicial to the administration of justice, in violation of Colo. RPC 8.4(d).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM IX

### [Knowing Failure to Comply with a Court Order—Colo. RPC 3.4(c) ]

71. Paragraphs 59 through 70 are incorporated herein as if fully set forth.

72. The respondent received and was aware of the orders entered by Judge Miller on August 20, 2003 and March 8, 2004.

73. The respondent has knowingly failed to comply with Judge Miller's orders by failing or refusing to take any steps to satisfy the sanctions order and judgment entered against him personally.

74. Through his conduct as described above, the respondent has violated Colo. RPC 3.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM X

### [Knowing Failure to Respond Reasonably to a Lawful Demand for Information From a Disciplinary Authority—Colo. RPC 8.1(b) ]

75. Paragraphs 59 through 74 are incorporated herein as if fully set forth.

76. On April 20, 2004, Regulation Counsel sent to the respondent, via certified mail, notice of the request for investigation submitted by Ms. Davison and Mr. Wesoky. In the letter, the respondent was instructed to submit a written response within 20 days of receipt of the letter.

77. The request and notice was sent to the respondent at his registered business address. The respondent received and signed for the certified letter from Regulation Counsel on April 27, 2004.

78. The respondent has failed or refused to respond to the request for investigation, despite having received the letter and knowing he is required to submit a response.

79. Pursuant to Colo. RPC 8.1(b), a lawyer in connection with a disciplinary matter shall not knowingly fail to respond reasonably to a lawful demand for information from a disciplinary authority.

80. Through his conduct as described above, the respondent has violated Colo. RPC 8.1(b).

WHEREFORE, the people pray that the respondent be found to have engaged in misconduct under C.R.C.P. 251.5 and the Colorado Rules of Professional Conduct as specified above; the respondent be appropriately disciplined for such misconduct; the respondent be required to take any other remedial action appropriate under the circumstances; and the respondent be assessed the costs of this proceeding.

DATED this 27th day of September, 2004.

Respectfully submitted,

Gregory G. Sapakoff, # 16184

Assistant Regulation Counsel

John S. Gleason,# 15011

Regulation Counsel

Attorneys for Complainant

## COMPLAINT

THIS COMPLAINT is filed pursuant to the authority of C.R.C.P. 251.9 through 251.14, and it is alleged as follows:

### *Jurisdiction*

1. The respondent has taken and subscribed the oath of admission, was admitted to the bar of this court on October 1, 1971, and is registered upon the official records of this court, registration no. 858. He is subject to the jurisdiction of this court in these disciplinary proceedings. The respondent's registered address is 4901 East Dry Creek, Suite 102, Centennial, Colorado 80122.

### *CLAIM I*

### [Failure to Keep Client Funds Separate From the Lawyer's Own Property— Colo. RPC 1.15(a) ]

2. In June of 2003, Hal Toland retained the respondent to represent him in a wage claim against the Colorado Department of Transportation. On or about June 4, 2003, Mr. Toland and the respondent both signed a written contingency fee agreement pursuant to which Mr. Toland agreed to pay the respondent 33 1/3% of the amount collected, and 45% if the case was appealed.

3. The fee agreement included a provision stating, "I agree to pay a retainer fee of $1,000.00, which shall be credited toward the contingent fee."

4. An attorney-client relationship between the respondent and Mr. Toland was formed.

5. In July of 2003, the respondent told Mr. Toland he would need another $1,000.00 before he could get started on the case.

6. Reluctantly, Mr. Toland paid an additional $1,000.00 to the respondent and signed another fee agreement, dated July 10, 2003, relating to the same matter.

7. The new fee agreement refers to "FLSA and other state law claims for overtime and comp time against the State of Colorado and the Department of Transportation—Denver District Court."

8. In the second fee agreement, the respondent included a provision concerning Mr. Toland's agreement to pay another retainer of $1,000.00. Again, the fee agreement expressly provides that this amount "shall be credited toward the contingent fee." Mr.

Toland paid the additional $1,000.00, for a total advance retainer of $2,000.00.

9. The fee agreements do not address what was to happen if there was no recovery. The fee agreements do not define any means by which the respondent would earn the advance retainers paid to him, other than the occurrence of the defined contingency. Neither of the fee agreements state that the advance retainers were to be considered earned at the time paid to the respondent.

10. As of the time he was retained by Mr. Toland, the respondent had not earned the advance fees paid to him and had not conferred a benefit upon Mr. Toland.

11. The respondent filed a single lawsuit for Mr. Toland in Denver District Court. The respondent represented Mr. Toland in that matter until May of 2004.

12. In June of 2004, the respondent told Mr. Toland he was leaving the practice of law and would no longer handle Mr. Toland's case. At that time, a trial was scheduled to commence in the case on August 2, 2004.

13. Mr. Toland had to scramble to find another attorney to represent him. Thomas H. Stocker, Esq., was able to take over representation but could not prepare and be available for the original trial date.

14. On July 12, 2004, the court conducted a status conference at which the respondent was allowed to withdraw from representation and Mr. Stocker was permitted to enter his appearance on Mr. Toland's behalf. On that date, the court also entered an order vacating the August trial date and resetting the matter for trial commencing on December 13, 2004.

15. After the respondent terminated his representation in the matter, Mr. Toland requested that the respondent refund the retainers he had paid to the respondent.

16. Despite the fact that the respondent had not obtained any recovery for Mr. Toland and, therefore, had not earned a contingent fee, the respondent refused to refund any portion of the retainers. The respondent also asserted an attorney's lien against any proceeds of the pending litigation in Denver District Court.

17. Despite the fact that the respondent never earned the retainers paid to him by Mr. Toland during the course of his representation of Mr. Toland, the respondent neither deposited the retainers into a trust account nor maintained the retainers in an account separate from the respondent's own property.

18. Pursuant to Colo. RPC 1.15(a), a lawyer shall keep property and funds belonging to a client separate from the lawyer's own property.

19. Through his conduct as described above, the respondent violated Colo. RPC 1.15(a).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM II

**[Failure, Upon Termination of Representation, to Take Steps to the Extent Reasonably Practicable to Protect a Client's Interests—Colo. RPC 1.16(d) ]**

20. Paragraphs 1 through 19 are incorporated herein as if fully set forth.

21. Pursuant to Colo. RPC 1.16(d), a lawyer shall, upon termination of representation, take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, and refunding any advance payment of fee that has not been earned.

22. The respondent failed to give Mr. Toland reasonable notice of his intent to withdraw from representation given the close proximity of the trial date in Mr. Toland's case.

23. The respondent did not terminate his representation in a manner allowing time for Mr. Toland to employ other counsel given the close proximity of the trial date in Mr. Toland's case.

24. The respondent failed, upon termination of his representation, to refund the

advance payment of fee made by Mr. Toland, despite demand from Mr. Toland.

25. Because no contingency had occurred that would have entitled the respondent to any fee as of the time of his termination, he had not earned any portion of the retainers paid to him by Mr. Toland as of the time he terminated his representation.

26. Through his conduct as described above, the respondent violated Colo. RPC 1.16(d).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM III

### [Failure to Respond to Reasonable Request for Information from a Client—Colo. RPC 1.4(a) ]

27. Paragraphs 1 through 26 are incorporated herein as if fully set forth.

28. For approximately five weeks during May and June of 2004, Mr. Toland attempted numerous times to reach the respondent by telephone.

29. The respondent failed to return any of Mr. Toland's telephone messages during that period of time.

30. Pursuant to Colo. RPC 1.4(a) a lawyer shall promptly comply with reasonable requests for information from a client.

31. The telephone calls made by Mr. Toland to the respondent in May and June of 2004 constituted reasonable requests for information from a client.

32. Through his conduct as described above, the respondent failed to comply with his obligations under Colo. RPC 1.4(a).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM IV

### [Failure to Respond Reasonably to a Lawful Demand for Information from a Disciplinary Authority—Colo. RPC 8.1(b) ]

33. Paragraphs 2 through 32 are incorporated herein as if fully set forth.

34. On or about August 3, 2004, notice of the request for investigation in this matter was sent to the respondent by the Office of Attorney Regulation Counsel, by certified and regular mail, to his registered address.

35. In the notice, the respondent was instructed to submit a written response to the request for investigation within 20 days of receipt of the letter.

36. The certified letter sent to the respondent was returned unclaimed but the letter sent via regular mail was not returned.

37. As of September 1, 2004, the respondent had not submitted a response to the request for investigation. On that date, the Office of Attorney Regulation Counsel sent a second letter to the respondent advising that he had not responded to the request for investigation and was required to do so within ten additional days.

38. In the letter of September 1, 2004, the respondent was advised that his failure to cooperate in the investigation could be, in and of itself, grounds for discipline.

39. Upon information and belief, the respondent received both the notice sent to him on August 3, 2004, and the letter sent to him on September 1, 2004.

40. The respondent failed to respond to the request for investigation or otherwise cooperate with the Office of Attorney Regulation Counsel in its attempts to investigate this matter.

41. Pursuant to Colo. RPC 8.1(b), a lawyer in connection with a disciplinary matter shall not knowingly fail to respond reasonably to a lawful demand for information from a disciplinary authority.

42. Through the correspondence sent to the respondent as alleged above, the Office of Attorney Regulation Counsel, in its capacity as a disciplinary authority, made a lawful demand for information from the respondent in connection with a disciplinary matter.

43. The respondent knowingly failed to respond reasonably to the lawful demand for information from the Office of Attorney Regulation Counsel.

44. Through his conduct as described above, the respondent violated Colo. RPC 8.1(b).

WHEREFORE, the people pray that the respondent be found to have engaged in misconduct under C.R.C.P. 251.5 and the Colorado Rules of Professional Conduct as specified above; the respondent be appropriately disciplined for such misconduct; the respondent be required to take any other remedial action appropriate under the circumstances; and the respondent be assessed the costs of this proceeding.

DATED this 7th day of January, 2005.

Respectfully submitted,

Gregory G. Sapakoff, # 16184

Assistant Regulation Counsel

John S. Gleason, # 15011

Regulation Counsel

Attorneys for Complainant

## COMPLAINT

THIS COMPLAINT is filed pursuant to the authority of C.R.C.P. 251.9 through 251.14, and it is alleged as follows:

### *Jurisdiction*

1. The respondent has taken and subscribed the oath of admission, was admitted to the bar of this court on October 1, 1971, and is registered upon the official records of this court, registration no. 858. He is subject to the jurisdiction of this court in these disciplinary proceedings. The respondent's registered address is 4901 East Dry Creek, Suite 102, Centennial, Colorado 80122.

### *CLAIM I*

**[Practicing Law in Violation of the Regulations of the Legal Profession—Colo. RPC 5.5(a) ]**

2. Bill Davis was employed by Arapahoe County, Colorado, for more than 20 years until his employment was terminated on or about May 3, 2004.

3. Shortly after his employment was terminated, Mr. Davis retained the respondent to represent him in seeking administrative review of the termination and, if necessary, filing suit for wrongful termination.

4. On or about May 10, 2004, the respondent faxed a letter to Brian Field, Human Services Director for Arapahoe County, advising that the respondent was representing Mr. Davis. In the letter, the respondent expressed Mr. Davis' desire to appeal his termination through Arapahoe County's established internal procedures.

5. The respondent sent a copy of his letter to Kathryn Schroeder, the County Attorney.

6. The fax cover sheet and the letter from the respondent both identified the respondent as an attorney.

7. As a result of the respondent's notice to Arapahoe County, internal appellate procedures were initiated and eventually a hearing was scheduled to commence in August 2004 before Mr. Field in his capacity as Human Services Director for Arapahoe County.

8. On July 22, 2004, the Colorado Supreme Court entered an order immediately suspending the respondent from the practice of law pursuant to C.R.C.P. 251.8.6, for failure to cooperate in other disciplinary investigations.

9. The court mailed copies of its order of suspension to the respondent at his registered address and all other known addresses for the respondent.

10. The respondent received the order of suspension and was aware that he was not permitted to practice law after July 22, 2004.

11. The respondent failed to notify the County Attorney's office or anyone else with Arapahoe County, including Mr. Field, of his suspension from the practice of law.

12. The respondent also failed to notify his client, Mr. Davis, of his suspension.

13. After his immediate suspension from the practice of law, the respondent continued to advise Mr. Davis concerning his legal rights, including his rights and potential remedies in civil litigation in the event the administrative proceedings in Arapahoe County were not successful.

14. The hearing in Mr. Davis' case was held over several days on August 24, and 26, and September 15, 23 and 28, 2004.

15. The respondent represented Mr. Davis throughout the proceedings.

16. During Mr. Davis' administrative hearing with Arapahoe County, the participants, including Mr. Davis himself, frequently referred to the respondent as Mr. Davis' attorney.

17. The respondent did not take any steps, in light of such references, to clarify that he had been suspended from the practice of law.

18. Following the administrative hearing, the parties were each allowed to submit written arguments to Mr. Field. The respondent submitted a written argument on behalf of Mr. Davis on October 1, 2004, and a rebuttal argument in response to a letter from the County Attorney on October 13, 2004.

19. At least one of the written arguments was mailed to Mr. Field by the respondent in an envelope identifying the respondent as an attorney.

20. Mr. Field upheld the decision to terminate Mr. Davis' employment. Thereafter, the respondent represented Mr. Davis in preparing and submitting a claim to the U.S. Equal Employment Opportunity Commission ("EEOC").

21. The respondent also sent a letter on Mr. Davis' behalf giving Arapahoe County notice of Mr. Davis' intent to sue the county. This letter was sent by the respondent after he was informed of his suspension from the practice of law.

22. Following his suspension from the practice of law, the respondent also continued to request payments from Mr. Davis for his services as an attorney, at his usual attorney rate.

23. Mr. David paid the respondent for services after the date of the respondent's suspension.

24. When Mr. Davis paid the respondent for his services after the date of the respondent's suspension from the practice of law, the respondent provided to Mr. Davis receipts that referred to the respondent as an attorney.

25. Throughout his representation of Mr. Davis, the respondent advised Mr. Davis concerning his legal rights, including his rights beyond any administrative proceeding in Arapahoe County or before the EEOC.

26. Through his conduct after July 22, 2004, as described above, the respondent engaged in conduct constituting the practice of law, and continued to hold himself out to his client and others as an attorney.

27. Through such conduct, the respondent practiced law in Colorado in violation of the regulations of the legal profession in Colorado, and in violation of the order suspending him from the practice of law, in violation of Colo. RPC 5.5(a).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM II

**[Failure to Keep a Client Reasonably Informed About the Status of a Matter and to Explain a Matter to the Extent Reasonably Necessary to Permit the Client to Make Informed Decisions Regarding the Representation—Colo. RPC 1.4(a) and 1.4(b) ]**

28. Paragraphs 1 through 27 are incorporated herein as if fully set forth.

29. In representing Mr. Davis, the respondent had a duty, pursuant to Colo. RPC 1.4(a), to keep Mr. Davis reasonably informed about the status of his matter.

30. The respondent failed to keep Mr. Davis reasonably informed by failing to notify Mr. Davis of his suspension from practice of law and the effect that suspension would have on the respondent's continued ability to represent Mr. Davis.

31. Pursuant to Colo. RPC 1.4(b), the respondent also had a duty to explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

32. The respondent, therefore, had a duty to explain his own circumstances, including

his suspension from the practice of law, to the extent reasonably necessary to permit Mr. Davis to make informed decisions regarding the continued representation and whether to obtain substitute counsel earlier in the process.

33. The respondent failed to inform Mr. Davis of his suspension from the practice of law or the effect the suspension would have on his case.

34. Because of the respondent's failure to comply with his duties in this regard, Mr. Davis continued to invest time and money in the respondent as his counsel, rather than retain another lawyer who would be able to continue the representation, including representation in court proceedings beyond the administrative processes.

35. Through the respondent's conduct as described above, the respondent violated Colo. RPC 1.4(a) and 1.4(b).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM III

### [Knowing Failure to Comply with an Obligation Under the Rules of a Tribunal—Colo. RPC 3.4(c) ]

36. Paragraphs 1 through 35 are incorporated herein as if fully set forth.

37. Pursuant to C.R.C.P. 251.28, the respondent was required to notify all clients of his suspension from the practice of law by certified mail promptly following his suspension.

38. The respondent failed to provide any notice of his suspension to Mr. Davis, in writing or otherwise.

39. Pursuant to C.R.C.P. 251.28(d), the respondent was also obligated to submit to the Colorado Supreme Court an affidavit verifying his compliance with the provisions of C.R.C.P. 251.28. The respondent knowingly failed to submit such an affidavit.

40. The respondent knew of his obligations pursuant to C.R.C.P. 251.28, or is presumed to have known of his obligations under the rule as an attorney practicing law in the State of Colorado.

41. Through his conduct as described above, the respondent knowingly failed to comply with obligations under the rules of a tribunal, in violation of Colo. RPC 3.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM IV

### [Conduct Involving Dishonesty, Fraud, Deceit or Misrepresentation–Colo. RPC 8.4(c) ]

42. Paragraphs 1 through 41 are incorporated herein as if fully set forth.

43. Through his communications with Mr. Davis and with others as counsel for Mr. Davis, the respondent continued to lead Mr. Davis and others to believe that he was authorized to practice law after the date of his immediate suspension.

44. The respondent knowingly withheld from Mr. Davis and others information concerning his suspension from the practice of law despite having a duty to communicate the information to his client.

45. The respondent affirmatively deceived Mr. Davis by continuing to charge for services at attorney rates, collecting fees for legal services as if he were still licensed to practice law, and giving Mr. Davis receipts representing himself as an attorney.

46. The respondent affirmatively deceived others by holding himself out as an attorney during appearances and in writing, and by continuing to act as Mr. Davis' attorney.

47. Through his conduct as described above, the respondent knowingly deceived Mr. Davis and others, made affirmative misrepresentations, and made misrepresentations by omission.

48. The respondent's conduct violated Colo. RPC 8.4(c) (it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation).

49. As a result of the respondent's violation of Colo. RPC 8.4(c), Mr. Davis was in-

duced to continue making payments to the respondent based upon the false belief that the respondent was authorized to practice law and could continue to represent Mr. Davis through administrative proceedings and beyond. Now, Mr. Davis must pay another attorney to become acquainted with the facts and circumstances in his case and to take over representation from the respondent.

WHEREFORE, the people pray that the respondent be found to have engaged in misconduct under C.R.C.P. 251.5 and the Colorado Rules of Professional Conduct as specified above; the respondent be appropriately disciplined for such misconduct; the respondent be required to refund fees to the client for work performed after the date of the respondent's immediate suspension from the practice of law; the respondent be required to take any other remedial action appropriate under the circumstances; and the respondent be assessed the costs of this proceeding.

DATED this 7th day of February, 2005.

Respectfully submitted,

Gregory G. Sapakoff, # 16184

Assistant Regulation Counsel

John S. Gleason, # 15011

Regulation Counsel

Attorneys for Complainant